IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL ALETUM
*Plaintiff*

      v.

KUEHNE + NAGEL COMPANY
*Defendant.*

Civil Action No. ELH-19-1972

**MEMORANDUM OPINION**

The self-represented plaintiff, Michael Aletum, has filed an employment discrimination action against defendant "Kuehne + Nagel Company" ("Kuehne")[1] under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.* ECF 8 (the "Amended Complaint").[2] Plaintiff, who is deaf, alleges that Kuehne asked him "illegal questions" during a job interview and declined to hire him because of his disability. *Id.* at 6; *see* ECF 1 at 1-2.

Now pending is Kuehne's "Motion to Dismiss the First Amended Complaint," pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6). ECF 14. The motion is supported by a memorandum of law (ECF 14-1) (collectively, the "Motion) and one exhibit. ECF 14-2. Mr. Aletum opposes the Motion. ECF 24 (the "Opposition"). Five exhibits are appended to the Opposition. ECF 24-1 to ECF 24-5. Defendant has replied. ECF 27.

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

---

[1] In his suit, plaintiff identifies defendant as "Kuehne + Nagel Company." ECF 8 at 1. However, defendant refers to itself as "Kuehne + Nagel Inc." ECF 14. The Clerk shall be directed to correct the name of the defendant on the docket.

[2] The initial suit is docketed at ECF 1. It was subsequently amended. *See* ECF 8. However, ECF 8 is titled "Complaint," not Amended Complaint or First Amended Complaint.

## I.     Factual and Procedural Background[3]

Plaintiff, a resident of Takoma Park, Maryland, is "totally hearing Impaired or Deaf" and communicates using American Sign Language.  ECF 1 at 1.  Kuehne is "one of the world's leading logistics companies," with more than 80,000 employees in over one hundred countries. *About Us*, KUEHNE + NAGEL, https://www.kn-portal.com/about_us/about_us/ (last accessed Apr. 14, 2020).

On June 4, 2019, plaintiff filed suit in the U.S. District Court for the District of Columbia. ECF 1.  By Order of June 12, 2019, Judge James Boasberg found that venue was improper because plaintiff is a resident of Maryland and plaintiff listed a Maryland address for Kuehne. ECF 4.  Therefore, Judge Boasberg transferred the case to the District of Maryland, pursuant to 28 U.S.C. § 1406(a).  *Id.*

By Order of August 26, 2019, I directed plaintiff to amend his complaint to comply with Fed. R. Civ. P. 8(a).  ECF 7.  In particular, I instructed that the complaint "must include the dates of the alleged events, identify the individual(s) with whom he communicated, and provide facts to support his claim that the interview was conducted in an unlawful, discriminatory manner." *Id.* at 2.  The Court cautioned that "failure to adequately supplement the Complaint will result in dismissal of the Complaint without prejudice and without further notice."  *Id.*  Plaintiff filed the Amended Complaint on September 23, 2019.  ECF 8.

Mr. Aletum alleges that he interviewed for a management position with Kuehne on July 13, 2018.  ECF 8 at 6.  The interview was conducted over the phone through "Purple Relay

_____

[3] At this juncture, I shall assume the truth of the allegations in the suit and draw all reasonable inference in plaintiff's favor.  *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). In addition, as discussed, *infra*, the Court "may take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

Service" ("Purple") *id.*, a service that enables deaf and hearing-impaired persons to communicate in sign language with voice telephone users. *See What is VRS?* PURPLE, https://signlanguage.com/vrs/ (last accessed Apr. 14, 2020).

According to plaintiff, the interview with Kuehne's general manager lasted "less than 10 minutes." ECF 8 at 6. He also states it was "approximately 4 mins . . . ." *Id.* at 10. During the interview, Kuehne's general manager allegedly asked Mr. Aletum "illegal questions" and "never interviewed the proper questions related [to the] management position." *Id.* a 6. Plaintiff also claims that the general manager "seemed asking [sic] 'Disability question?' or something else." *Id.* Further, plaintiff alleges that the interview "was not sufficient time to question for related job factors." *Id.* at 10.

Kuehne did not extend a job offer to plaintiff. *See* ECF 8 at 6. He alleges that he "was not considered for the management position because the defendant violated the ADA under the federal law." *Id.*

The docket did not reflect that Mr. Aletum had filed summons with the Clerk. Therefore, the Court issued an Order on October 11, 2019 (ECF 9), directing plaintiff to file completed summons with the Clerk and detailing how plaintiff could obtain the name and service address for Kuehne's resident agent. *Id.* at 2. The Court further explained that because Mr. Aletum was proceeding *in forma pauperis*, the Court would order the U.S. Marshal to serve defendant on plaintiff's behalf. *Id.* at 1.

On October 28, 2019, plaintiff wrote to the Court stating that he had only filled out his name and defendant's name on the summons. ECF 10. In his view, "the Process Server, Sheriff, and Clerk have got to do these forms and sign these." *Id.* at 1. Mr. Aletum's letter suggests that

he was unsure how to complete the forms.  He stated, *id.* at 2: "I don't know what the process server fills, signs and defendants are sent by the server/sheriff."

Summons were issued to plaintiff the next day (ECF 11), but plaintiff submitted unsigned forms, which the Clerk returned to him on November 4, 2019.  ECF 12.  On November 21, 2019, the Court received correspondence from plaintiff, reiterating that his interview with Kuehne was only four minutes long.  ECF 13 at 1.  In addition to his letter, plaintiff submitted  a call log from Purple, dated July 13, 2018, and an email to Mr. Aletum from Amber Gabriel, a Talent Acquisition Marketing Specialist at Kuehne, dated July 12, 2019.  ECF 13 at 4-6.

On December 23, 2019, defendant moved to dismiss the Amended Complaint for insufficient service, pursuant to Rule 12(b)(5), and for failure to state a claim under Rule 12(b)(6).  ECF 14; ECF 14-1.  On the same day, the Court directed plaintiff to submit completed summons to the Clerk by January 7, 2020, to effect service of process.  ECF 16.  The Court stressed that failure to comply with the Order would result in dismissal of the case, without prejudice.  *Id.*  Summons were returned executed as to Kuehne on January 14, 2020.  ECF 21.

The Court issued a Notice to plaintiff on December 26, 2018 (ECF 18), advising of his right to respond to the Motion and the potential consequences of failing to do so.  Plaintiff's opposition was due January 15, 2020.  *See* Local Rule 105.2(a).  However, the Court did not receive plaintiff's opposition to the Motion until February 6, 2020.  ECF 24.  Defendant replied on February 19, 2020.  ECF 27.

## II.    Standard of Review[4]

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).   That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).   Of course, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).   *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect

---

[4] I discuss only the standard under Fed. R. Civ. P. 12(b)(6), for failure to state claim. Because plaintiff's Amended Complaint, even liberally construed, does not state a claim under the ADA, I need not address defendant's contentions regarding service of process under Rule 12(b)(5).

statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual

allegations, and then determining whether those allegations allow the court to reasonably infer"
that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*,
655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

I am mindful that plaintiff is self-represented. Therefore, his pleadings are "liberally
construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v.
Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from
pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D.
Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase
Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro
se litigants are involved, the court cannot ignore a clear failure to allege facts that support a
viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See
Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d
387, 391 (4th Cir. 1990). Therefore, the court cannot fashion claims for a plaintiff because she is
self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert.
denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199,
203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in
failing to consider an Equal Protection claim, because plaintiff failed to allege it in the
complaint).

As the Fourth Circuit has said: "To do so would not only strain judicial resources by
requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would
also transform the district court from its legitimate advisory role to the improper role of an
advocate seeking out the strongest arguments and most successful strategies for a party."

*Beaudett*, 775 F.2d at 1278.  What the Fourth Circuit stated in *Harris v. Angliker*, 955 F.2d 41,

1992 WL 21375, at *1 (4th Cir. 1992) (per curiam) (unpublished), is also apt:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), cert. denied, 382 U.S. 966, 86 S. Ct. 458, 15 L.Ed.2d 370 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S. Ct. 1475, 89 L.Ed.2d 729 (1986).

Ordinarily, courts do not "'resolve contests surrounding the facts, the merits of a claim,

or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)

(quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts

sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be

reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d

458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability

Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the

legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4

F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the

affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman,* 494 F.3d at

464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts

are limited to considering the sufficiency of allegations set forth in the complaint and the

'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l,

Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at

448).  Ordinarily, the court "may not consider any documents that are outside of the complaint,

or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549,

557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see*

*also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Moreover, in the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. 2016); *see, e.g.*, *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"); *Schultz v. Braga*, 290

F.Supp.2d 637, 651 n. 8 (D.Md.2003) (taking judicial notice of dockets in state proceedings). However, as with all facts, these documents must be construed in the light most favorable to the non-movant.  *See Clatterbuck*, 708 F.3d at 557.

As noted, the Motion is supported by one exhibit.  ECF 14-2.  The exhibit includes a declaration of Wanda Pauley, a Kuehne employee, concerning plaintiff's service of process, *id.* at 2-3; an envelope addressed to Kuehne, *id.* at 5; plaintiff's Amended Complaint, *id.* at 8-15; the email from Ms. Gabriel to Mr. Aletum, *id.* at 16; and the Court's Order of August 26, 2019.  *Id.* at 19-21.  Plaintiff submitted five exhibits along with his Opposition.  ECF 24-1 to ECF 24-5. ECF 24-1 is a response to defendant's Motion as well as a list of "Disability question[s]."  ECF 24-2 is a receipt issued by the Clerk, dated February 4, 2020.  ECF 24-3 is a copy of the Motion that has been annotated by plaintiff.  ECF 24-4 contains a series of emails between Mr. Aletum and Ms. Gabriel.  Finally, ECF 24-5 contains the call log from Purple.

In resolving the Motion, I may consider the Affidavit of Ms. Pauley for the limited purpose of assessing the sufficiency of service of process under Rule 12(b)(5).  *See Boyd v. Johnson Food Servs., LLC*, No. 3:17-cv-03414-JMC, 2019 WL 1090725, at *3 (D.S.C. Mar. 8, 2020) ("'When personal jurisdiction is challenged as a result of alleged improper service, a trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.'") (cleaned up and citation omitted); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  The Court may take judicial notice of court filings, such as the Court's Order of August 6, 2018, plaintiff's Amended Complaint, and Kuehne's Motion.  *See Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20, 2015) (observing that a court may take judicial notice of "docket entries, pleadings and papers"), *aff'd*, 639 F. App'x 200 (4th Cir. 2016).  And, I may consider the call log

from Purple as the contents and length of the phone interview are discussed in the Amended Complaint, and defendant does not contest the authenticity or accuracy of the document.

In contrast, I shall not consider the emails between Ms. Gabriel and Mr. Aletum, as these emails are not referenced in the Amended Complaint, nor are they integral to the suit. Likewise, although I shall construe pages 1-4 of ECF 24-1 as a continuation of plaintiff's Opposition, I shall not consider pages 5-7, which purport to inject new facts into the case that are not included in the Amended Complaint. *See So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

### III.   Discussion

#### A.

The ADA, 42 U.S.C. § 12101 *et seq.*, was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," *id.* § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). To that end, the statute "prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111-12117; public services, under Title II, 42 U.S.C. §§ 12131-12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182-12189." *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 361 (4th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)).

Of relevance here, the ADA prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'").[5]

A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."   42 U.S.C. § 12111(8).   A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" *Id.* § 12102(1); *see Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)).   Major life activities include, but are not limited to, "sleeping, walking, standing, lifting, bending . . . working" and "reproductive functions." 42 U.S.C.   § 12102(2)(A)-(B).   An individual with a "a record of such an impairment," or who is "regarded as having such an impairment," will be considered to have a disability. *Id.* § 12102(1)(B)-(C).

---

[5] "Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the requirement that a plaintiff must exhaust [her] administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, *see id.* § 2000e–5(b), (f)(1)." *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).   The administrative claims process is "an integral part" of the enforcement scheme that Congress set out in Title VII.   *Chacko v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir. 2005).   By incorporation, it is also integral to the ADA.   *See Sydnor*, 681 F.3d at 593.   "Allowing [the EEOC] first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'"   *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

Under Title I of the ADA, the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" *Id.* §12112(b)(5)(A); *see Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013).[6] Additionally, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B).

## B.

*At trial*, discrimination claims brought under the ADA may be proven through two avenues of proof. *See Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001); *see also Lewis v. Gibson*, 621 F. App'x 163, 165 (4th Cir. 2015) (per curiam).

The first avenue involves "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). Under the first avenue, the plaintiff offers "'direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Rhoads*, 257 F.3d at 391 (alteration and citation omitted). A plaintiff who "demonstrates that his or her disability played a motivating role in the employment decision" is "entitled to relief."

---

[6] The term "reasonable accommodations," which is derived from the employment discrimination provisions of Title I of the ADA, is essentially synonymous with the term "reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services," 42 U.S.C. § 12131(2), which is what Title II of the ADA requires a public entity to provide. *See, e.g.*, *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007) ("Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation.'"); *McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004) ("Although Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,' these terms create identical standards.").

*Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999). "'What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Rhoads*, 257 F.3d at 391-92 (quoting *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999)) (internal citation omitted).

The second avenue of proof available to the plaintiff is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the three steps of the *McDonnell Douglas* framework). Although *McDonnell Douglas* involved a claim of racial discrimination under Title VII, its burden-shifting methodology has been adapted for use in ADA discrimination cases. *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50-52 & n.3 (2003) (applying *McDonnell Douglas* framework in ADA employment discrimination case); *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (same); *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006) (same); *EEOC v. Optimal Sols. & Techs., Inc.*, 422 F. Supp. 3d 1037, 1042 (D. Md. 2019) (same). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

To proceed under the *McDonnell Douglas* approach, the plaintiff must first establish a prima facie case of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence* Agency, 848 F.3d 305, 315 (4th Cir. 2017). To establish a prima facie case for failure to hire under the ADA, the plaintiff must show that: "'(1) he is within the ADA's protected class; (2) he applied for the [vacant] position in question; (3) he was qualified for that position; and (4) the defendant[] rejected his application under circumstances that give rise to an inference of discrimination.'" *Wilson v. Dollar Gen. Corp*.,

122 F. Supp. 3d 460, 463 (W.D. Va. 2015) (citation omitted); *see also EEOC v. Cracker Barrel Old Country Store, Inc.*, PX-18-cv-2674, 2020 WL 247305, at *3 (D. Md. Jan. 16, 2020); *Martell v. Sparrows Point Scrap Processing, LLC*, 214 F. Supp. 2d 527, 528 (D. Md. 2002).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action,"

then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. But, at the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of . . . discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]"   Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief . . . ." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

## C.

As noted, defendant moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(5) for insufficient service of process. ECF 14-1 at 6-8. According to Kuehne, plaintiff "simply mailed the Summons and Amended Complaint—to no one in particular—at [its] place of business in Aberdeen, Maryland," and therefore he has not effected service of process in accordance with Fed. R. Civ. P. 4 or Maryland Rule 2-124(d). *Id.* at 8. Further, defendant contends that the Amended Complaint does not satisfy the "short and plain statement" requirement of Fed. R. Civ. P. 8. *Id.* at 9-11. Instead, Kuehne argues that the Amended Complaint "merely rehashes Plaintiff's general dissatisfaction with his interview, without alleging any clear or direct facts that give rise to a reasonable inference that the interview was conducted in an unlawful, discriminatory manner so as to satisfy Rule 8, *Twombly*, and this Court's Order." *Id.* at 9.

In response, plaintiff characterizes Kuehne's assertions as "dishonest" and "false." ECF 24 at 2. Mr. Aletum largely trains his argument on the merits of his case, averring that Kuehne

18

turned him down for a job because he is deaf and that he was asked "disability question, something else, impropriety and inappropriate of interview." *Id.* at 5; *see generally* ECF 24. With respect to service of process, plaintiff posits that it is the "clerk's job" and "not [his] job" to correctly effect service of process. ECF 24-1 at 3. As to the adequacy of the Amended Complaint, plaintiff tries to supplement his allegations by listing those questions that were allegedly asked during the interview, labeling them "Disability question[s]," "inappropriate interview questions," and "something else questions." *Id.* at 5-7.

To be sure, plaintiff has sufficiently alleged that he has a recognized disability under the ADA. *See* 29 C.F.R. § 1630.2(i) (providing that "hearing" is one of the "life activities" contemplated by the ADA); *Cracker Barrel Old Country Store*, 2020 WL 247305, at *3 (recognizing that deafness is an ADA-recognized disability); *Bryant v. Better Bus. Bureau*, 923 F. Supp. 720, 743 (D. Md. 1996) (holding that "hearing loss approaching deafness" is a disability under the ADA). And, plaintiff adequately alleges that he applied for a vacant job at Kuehne and did not obtain the position. ECF 8 at 6.

However, the Amended Complaint does not support the inference that Kuehne denied plaintiff a job because of his disability. Mere failure to hire is not enough to state an ADA claim; other facts are necessary to infer impermissible animus. Here, there are not enough facts Plaintiff's pleading is conspicuously lean on facts—the "who, what, where, when, and why" of the case.

In his Amended Complaint, plaintiff submits, ECF 8 at 6: he had a phone interview on July 13, 2018, with a "general manager" at Kuehn for a management position; it lasted "less than 10 minutes"; and he was asked "illegal" as opposed to "proper" questions. Yet, the content

of the interview, such as the allegedly illegal questions posed to plaintiff during the interview, is left wholly to the imagination as that information is not included in plaintiff's pleadings.

Conclusory adjectives like "illegal" are not a substitute for factual allegations. Whether Kuehne's conduct was "illegal"—in this case, whether it violated the ADA—would ultimately require an answer to two questions: what did Kuehne actually do, and what does the ADA forbid? Assessing the facts—for example, deciding what Kuehne said to Mr. Aletum or did not say during the interview—is the province of the fact finder. The Court's role is to instruct the fact finder on the ADA, so that the fact finder can apply the law to the facts and render a verdict. *See United States v. Ellis*, 121 F.3d 908, 925 (4th Cir. 1997) (describing as "fundamental" our system of justice in which "it is the court that provides the legal yardstick and the jury that measures the evidence") (citing *Bollenbach v. United States*, 326 U.S. 607 (1946)). Thus, the Court cannot take plaintiff at his word that Kuehne's actions were "illegal," because that determination is for the fact finder to make at a later stage in the litigation.

At this juncture, the inquiry is more modest: whether the facts alleged by the plaintiff, assuming they are true, state a claim for relief. *See Iqbal*, 55 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570). Of course, without factual allegations, that assessment is impossible. A pleading that contains only "bare legal conclusions" is therefore "insufficient to state a claim" and must be dismissed under Rule 12(b)(6). *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011); *see Iqbal*, 55 U.S. at 678 (explaining that neither "labels and conclusions" nor "naked assertion devoid of further factual enhancement" are sufficient to state a claim) (cleaned up); *Twombly*, 550 U.S. at 544; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Because plaintiff's Amended Complaint offers legal conclusions, where facts are necessary, it fails to state a claim under the ADA.  Notably, I gave Mr. Aletum an opportunity to amend his complaint in order to remedy this deficiency.  Indeed, in the Order of August 8, 26, 2019, I instructed that the amended complaint should "provide facts to support his claim that the interview was conducted in an unlawful, discriminatory manner."  ECF 7.  Plaintiff heeded the Court's Order to the extent that he submitted the Amended Complaint.  But, he did not provide enough factual detail to support a claim of discrimination under the ADA.

Accordingly, I shall dismiss the Complaint, *without prejudice*.

## IV.    Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 14).   An Order follows, consistent with this Memorandum Opinion.


Date: April 23, 2020                              _____/s/_____

                                                 Ellen L. Hollander
                                                 United States District Judge